ON APPLICATION FOR REHEARING
Rehearing denied.
MILLER, Judge.
I would grant the application for rehearing. There is no credible evidence to support the finding that the injured six year old pedestrian darted from a screened position.[1]
Defendant’s insured Joseph L. Bordelon did testify that the oncoming traffic was bumper to bumper. But his testimony was not accepted by the trial court. In written reasons the trial court stated that “Mr. Bordelon was not an impressive witness being contentious and over defensive.” This finding is more than supported.
Ryland W. Folk’s testimony was accepted by the trial court and we have agreed that it is the most logical interpretation of the accident. But Folk’s testimony on two critical points does not support the trial court’s finding nor the decision of this court.
First, Mr. Folk made it absolutely clear that there was no northbound traffic within “three, four, five car lengths” in front of the Dunn car when the Dunn car made its emergency stop. Tr. 150, 151, 159. After this line of testimony was so well established, plaintiff’s counsel objected to further questions by defense counsel on this point. The trial court sustained the objection and at Tr. 159 specifically ruled that “He (Folk) said that there was no car in front of the green (Dunn) car.” (Parenthetical additions by the writer.)
Second, Mr. Folk testified unequivocally that when Dunn made his emergency stop, the children stopped and looked at the Dunn car and then crossed the remainder of the street. When they stopped they were half way across the northbound lane. Tr. 152. On re-direct examination by defense counsel at Tr. 163, Folk was asked:
“Q. * * * Mr. Folk, from the time these girls left the curb until they *506 ran into the side of Mr. Bordelon’s car, was their progress continuous across the street or not ?
* * * * * *
“A. No sir, there wasn’t.
“Q. Did you say that they paused in front of—
“A. The green (Dunn) car when he stopped, that’s right.
“Q. And for what length of time?
“A. Probably a minute.”
There was no southbound traffic ahead of Mr. Bordelon (Bordelon’s deposition exhibit P-4, pages 9, 20, 33.)
As I read the record, Mr. Folk testified that the westbound children had stopped in front of the northbound Dunn vehicle some ten feet east of the center of the street. At that time, the southbound Borde-lon vehicle had a clear view of the scene for a distance of at least three to five car lengths. There is no credible evidence in this record to support the finding that Dunn was closely following another northbound vehicle which screened Mr. Borde-lon’s view of the events occurring in the northbound lane.
Mr. Bordelon testified that he never saw the Dunn vehicle prior to the time the child ran into the side of his car. He admitted that he heard the squeal of brakes. But at that time, Bordelon testified that it was too late for him to do anything to avoid the accident. At Tr. 38, on cross examination, Mr. Bordelon testified:
“Q. Where had you been looking prior to the time that you heard the brakes squeal?
“A. Looking straight ahead.
"Q. When you say straight ahead, you are on Main Street in the southbound lane looking toward the river, is that right?
“A. Yeh, looking straight ahead in the street.
“Q. And your testimony is that you did not see the front end of Mr. Dunn’s car go down as he put on his brakes, is that right ?
“A. No, I didn’t see that particular thing, no.
“Q. And that is just over here in the lane next to you isn’t it ?
“A. Yeh, but I wasn’t looking in that direction, I wasn’t looking that way when he first did that. That is what drew my attention is when — I didn’t look right then and there, I just look just a moment later. I would have had to turn my head to see directly over there.”
In my opinion, this 67 year old driver failed to see what he should have seen and was therefore negligent. This negligence was a legal cause of the accident.
A reasonably alert southbound driver with a clear road ahead of him in his lane and a clear road in the oncoming lane for at least three, four or five car lengths, is bound to see what is occurring in the northbound lane when a northbound motorist has made an emergency stop to allow two westbound children to cross in front of his car. Mr. Bordelon should have seen two children stopped half way across the northbound lane some ten feet from the center of the road. He should have noted that the northbound motorist had made an emergency stop to avoid striking two children who were attempting to cross to the recently opened Dairy Queen ice milk stand. Mr. Bordelon admitted that he had looked to his right in the direction of the Dairy Queen shortly before the accident and that he would have stopped had he seen the children to his left.
Failing to find credible-evidence to support the trial court’s finding that the children darted from a screened position into the side of Mr. Bordelon’s car, I would grant the application for rehearing.

. Additionally, I find that we erroneously stated plaintiff appellant’s argument as a contention that “under Folk’s testimony, a gap of three to five car-lengths occurred when Dunn hit his brakes while the vehicles in front of him kept on going north.”
Instead, plaintiff appellant argued that after the emergency stop was made by Dunn, the children were stopped halfway across the northbound lane some ten feet east of the center of Main Street, and at that time there was no northbound traffic within three to five car lengths ahead of Dunn. Therefore Bordelon’s view of the children was not obscured. Dunn timely saw the children come from an obscured position and avoided an accident for which he would not have been negligent. But his emergency reaction should have drawn Bordelon’s attention to the children who were stopped and clearly visible to Bordelon.